IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM ALLEN LEGG | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-16-2814 |
| SPRING GROVE HOSPITAL SUPERINTENDENT CHERYL HIELMAN ATTORNEY GENERAL BRIAN FROSH THE STATE OF MARYLAND | * * | |
| Defendants | * | |

***

**MEMORANDUM OPINION**

Plaintiff William Allen Legg was charged with second-degree assault on a correctional employee occurring July 27, 2006. His competency was challenged and he was placed at Spring Grove Hospital Center ("SGHC")[1] per judicial order.[2] On August 8, 2016, Legg filed this civil rights action seeking money damages and immediate release from SGHC, stating he has been forcibly medicated and repeatedly returned to the facility without cause. ECF No. 1 at p. 3.

Defendants have filed an unopposed motion to dismiss or, in the alternative, for summary judgment.[3] ECF No. 5. Because the court will consider exhibits outside of the pleadings to

---

[1] SGHC, part of the Maryland Department of Health and Mental Hygiene ("DHMH"), provides residential psychiatric services to adults, including those who are ordered to the facility for evaluation as to competency to stand trial, criminal responsible, or following a finding that the individual is not criminally responsible. *See* http://health.maryland.gov/springgrove/Pages/PatientReferal.aspx.

[2] *See State of Maryland v. William Allen Legg*, Circuit Court for Harford County, Crim. No. 12K0001515, casesearch.courts.state.md.us/inquiry. This court may properly take judicial notice of matters of public record and other information that under Federal Rule of Evidence 201 constitute 'adjudicative facts. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see* Fed. R. Evid. 201(b); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011).

[3] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on October 29, 2016, Legg was notified that Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. ECF No. 6. He was also informed that he was entitled to file materials in opposition to that motion within 17 days from the date of that letter and that his failure to file a timely or response or to illustrate, by affidavit

determine the outcome of this case,[4] the motion will be treated as one for summary judgment under Rule 56. No hearing is needed to resolve the pending motion. *See* Local Rule 105.6 (D. Md. 2016).

## Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

---

or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.* Legg failed to respond.

[4] Those exhibits, ECF Nos. 5-2 through 5-20, which contain information concerning mental health status, shall be restricted to viewing by the parties.

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because Legg is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## Discussion

### A. Competency to Sue

Before the court can examine the issues in this case, the question of Legg's current mental competency must first be examined.[5] By Defendants' own admission, Legg has previously been found not competent to stand trial and has been involuntarily committed. ECF Nos. 5-2, 5-3.[6] His current mental health status is not apparent based on the parties' submissions.

Fed. R. Civ. P. 17(c)(2) states:

> A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.

With respect to Rule 17(c)(2), the Fourth Circuit has observed that "[t]he practical problem presented by a case in which a presumably competent party might be thought to be acting oddly, or foolishly, or self-destructively in prosecuting or defending a civil lawsuit, with or without counsel, is a real one," adding that "[p]arties to litigation behave in a great variety of ways that might be thought to suggest some degree of mental instability." Rule 17(c)(2) recognizes the existence of some forms of mental deficiency which may affect a person's practical ability to manage his or her own affairs that goes beyond "something other than mere foolishness or improvidence, garden-variety or even egregious mendacity, or even various forms of the more common personality disorders." *Hudnall v. Sellner*, 800 F. 2d 377, 385 (4th Cir. 1986).

---

[5] Legg's Complaint is cogent, with one notable exception; he seeks release in order to return to "my career as a New York State Senator." ECF 1 at p. 3.

[6] The page citations in this Memorandum Opinion are those assigned on the court's electronic docket.

Where, as here, "there has been a legal adjudication of incompetence that is brought to the court's attention, the Rule's provision is brought in play." *Id*. While Rule 17(c)(2) allows the court to appoint a guardian ad litem, it does not compel it to do so, but rather grants it considerable discretion to issue an "appropriate order" to protect the interest of an unrepresented incompetent litigant. *See Seibels, Bruce & Co. v. Nicke*, 168 F.R.D. 542, 543 (M.D.N.C. 1996); *Fonner v. Fairfax Cnty., VA*, 415 F.3d 325, 330 (4th Cir. 2005).

Fed. R. Civ. P. 17(b)(3) provides, in pertinent part, that a determination regarding the capacity to sue or be sued is controlled by the law of the party's state of domicile. Even if Legg had been appointed a guardian – which is not evident here -- such appointment is not evidence, under Maryland law, of incompetency. *See* Md. Code Ann. Est. & Trusts, §13-706(b)).

Legg's occasional delusional statements also do not serve as a bar to his proceeding in this case. *See Hudnall v. Sellner,* 800 F.2d 377, 385-87 (4th Cir. 1986) (delusional belief set forth in publication did not protect self-represented author from defamation suit). In the instant case, Legg's delusional belief that he is a state senator, while bizarre, does not negate his capacity to proceed with his complaint. In sum, it appears that following involuntary commitment, Legg was released from the facility on several occasions to live in the community and receive follow-up mental health treatment; Legg has regularly exhibited non-compliance with community treatment and had been returned to commitment at the time he filed suit; and while currently committed and receiving psychiatric services and medication, Legg was able to articulate the basis for the lawsuit now before the court. It is therefore appropriate to find that Legg may continue participation in this action as a self-represented litigant.

### B. Amenability to Suit

Under § 1983, liability is imposed on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights...." 42 U.S.C. § 1983. SGHC is a facility. It is not a "person" subject to suit under 42 U.S.C. § 1983. A number of courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301(E.D. N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). The § 1983 claim against SGHC is subject to dismissal.

Defendant Cheryl Hielman, SGHC's Superintendent, and Maryland Attorney General Brian Frosh also are entitled to dismissal. First, Legg does not specify what actions they took against him, thereby negating any claim for damages against these Defendants in their individual capacities. Furthermore, Legg's request for monetary damages against Hielman and Frosh in their official capacity for constitutional violations is barred by the Eleventh Amendment. Absent consent, a suit against a state or its officers in their official capacity, is barred. *See Penhurst State School and Hospital v Halderman*, 465 U.S. 89, 100 (1984).

While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Ann. Code, State Gov't. Art., § 12–201(a) (2014 West), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, the State of Maryland is not amenable to suit in this case. Furthermore, a suit against a state official in his or her official capacity is not a suit against the official, "but rather is a suit against the official's office" and as such, "is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Board of Trustees of University of Alabama v. Garrett*,

531 U.S. 356 (2001). States and their officers, sued in their official capacities, are not "persons" subject to suit for money damages under Section 1983. *Will*, 491 U.S. at 71; *Johnson v. Maynard*, Civ. Action No. ELH–12–2692, 2013 WL 4176958, at *5 (D. Md. Aug. 12, 2013).

There are several exceptions to the Eleventh Amendment bar. *See e.g. Equity In Athletics, Inc. v. Department of Education*, 639 F.3d 91, 107 n. 13 (4th Cir. 2011) (listing exceptions). For example, the Eleventh Amendment does not prevent private individuals from bringing suit against State officials for prospective or declaratory relief for ongoing violations of federal law. The record, however, does not support any claim on ongoing unconstitutional conduct on the part of Defendants Hielman and Frosh, and each is entitled to dismissal with regard to any claim against them in their official capacities. That determination, however, does not end the court's inquiry with regard to the alleged constitutional violations found in the complaint.

### C. Forced Medication

As an involuntarily committed patient in a State psychiatric facility, Legg has a "significant constitutionally protected liberty interest in avoiding the unwarranted administration of antipsychotic drugs." *Sell v. United States*, 539 U.S. 166, 178 (2003), quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990). "[W]hen the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." *United States v. Bush*, 585 F.3d 806, 813 (4th Cir. 2009). Thus, involuntarily committed mental patients "retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions." *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982).

7

Since his commitment to Spring Grove in 2007, Legg has been diagnosed with either schizoaffective disorder (bipolar type) or schizophrenia (bipolar type) by his treating psychiatrists. ECF No. 5-4, McMahon Affidavit at ¶ 5. During his commitment, he has exhibited symptoms of grandiosity, paranoia, poor insight and judgment, disorganization, and poor hygiene. *Id.* The uncontroverted record demonstrates that Legg has not received involuntary or forced medications since his commitment to SGHC in 2007, with one exception. On September 23, 2007, Legg was "increasingly delusional and disorganized" and refused to take his medication. *Id.,* McMahon Affidavit at ¶ 7. On January 16, 2008, he struck a staff member "for no reason." Because this was an emergency, a hearing was not required. Legg was started on a 72-hour emergency protocol and administered 5 mg of Haldol[7] and 50 mg of Benadryl[8] pursuant to Md. Code Ann., Health-Gen. § 10-708(b)(1)). *Id.,* McMahon Affidavit at ¶¶ 7-8. After receiving the emergency medications, Legg then agreed to restart his long-acting Haldol injection voluntarily. *Id.,* McMahon Affidavit at ¶¶ 10-11.

### D. Continued Commitment to SGHC

Legg complains that he has been "illegal[ly] rearrest[ed] on the "same charging document" and on the same charge, but never "rebooked as a requirement of law . . . and brought back to Spring Grove Hospital Center . . ." ECF No. 1 at p. 3. Defendants argue otherwise.

As previously noted, Legg was involuntarily committed to SGHC after the District Court of Maryland for Harford County on July 17, 2007, found him Not Criminally Responsible ("NCR") in the charge of second-degree assault on a Department of Corrections employee. *State v. Legg,* Case No. 6R53969 (District Court of Maryland for Harford County, July 17, 2007), ECF

---

[7] Haldol is an antipsychotic used to treat schizophrenia. *See* https://www.drugs.com/cdi/haldol.html.

[8] Benadryl (diphenhydramine) is an antihistamine used in psychiatric medicine to treat drug-induced abnormal muscle movements. *See* http://www.minddisorders.com/Del-Fi/Diphenhydramine.html.

No. 5-5.  Defendants argue that on several occasions since his initial commitment in 2007, the Office of Administrative Hearings recommended Legg's release and the Harford County District Court subsequently ordered his conditional release pursuant to Md. Code Ann., Crim. Proc. § 3-115.  Defendants show that starting with his initial 2007 commitment, Legg either eloped from DHMH or violated the terms of his conditional release, and that in all instances, Legg was returned and committed back to SGHC for violating the terms of his conditional release.

On September 11, 2007, Administrative Law Judge Neile S. Friedman recommended that Legg be released from confinement and placed on conditional release for five years.  *See* Maryland Office of Administrative Hearings Decision (Sept. 11, 2007), ECF No. 5-6.  Before the Harford County District Court ordered Legg's release, Legg left Spring Grove without permission on September 23, 2007.  *See* Letter to the Honorable Victor K. Butanis from Robin M. Templeton (dated Sept. 24, 2007), ECF No. 5-7.  This elopement voided his conditional release.

On March 27, 2012, Administrative Law Judge Thomas E. Dewberry recommended Legg be placed on conditional release for five years.  *See* Maryland Office of Administrative Hearings Decision (Mar. 27, 2012), ECF No. 5-8.  On April 10, 2012, the District Court for Harford County entered an order placing Legg on conditional release for five years.  *See* Findings, Conclusions and Order of Conditional Release (Apr. 10, 2012), ECF No. 5-9.  While awaiting placement at Alliance, Inc., Legg eloped from the hospital on August 12, 2012.  *See* Maryland Office of Administrative Hearings Decision (Oct. 12, 2012), ECF No. 5-10.  Legg was transferred back to Spring Grove pursuant to a Hospital Warrant on September 13, 2012.  *See* Hospital Warrant (Sept. 13, 2012), ECF No. 5-11.  On October 12, 2012, Administrative Law Judge Thomas E. Dewberry issued his report recommending that the District Court for Harford

County find that although Legg did violate his conditional release by violating his conditional release plan when he left the hospital and failed to contact the hospital, he nevertheless, met his burden of proving his eligibility for conditional release. *See* Maryland Office of Administrative Hearings Decision (Oct. 12, 2012), ECF No. 5-10. On October 22, 2012, the District Court for Harford County issued an order in accordance with ALJ Dewberry's recommendations and placed Legg on conditional release. *See* Findings, Conclusion and Order of Conditional Release (Oct. 22, 2012), ECF No. 5-12. In 2013, while Legg on conditional release, the State's Attorney for Harford County filed a Petition for Revocation of Conditional Release alleging that Legg eloped from his treatment provider, Key Point Health Services. *See* Petition for Revocation of Conditional Release, ECF No. 5-13. On June 7, 2013, a Hospital Warrant was served on Legg, and he was admitted back to Spring Grove. *See* Hospital Warrant (June 7, 2013), ECF No. 5-14. The District Court for Harford County entered an order on September 5, 2013, committing Legg to DHMH for inpatient treatment. *See* Order of Court (Sept. 5, 2013), ECF No. 5-15.

Legg again requested a hearing to determine his eligibility for conditional release or discharge in 2014. After a hearing by the Office of Administrative Hearings, ECF No. 5-16, ALJ Una Perez recommended Legg be placed on conditional release for two years. The District Court for Harford County issued an order conditionally releasing Legg from SGHC for two years on January 26, 2015. *See* Findings, Conclusions and Order of Conditional Release (Jan. 26, 2015), ECF No. 5-17.

In 2016, the State's Attorney for Harford County again filed another Petition for Revocation of Conditional Release in Legg's case, alleging he was notified by the Community Forensic Aftercare Program that Legg went missing on March 17, 2016. *See* Petition for Revocation of Conditional Release, ECF No. 5-18. A Hospital Warrant was served on Legg on

April 20, 2016.  *See* Hospital Warrant (Apr. 20, 2016), ECF No. 5-19.  Upon returning to SGHC, Legg waived his right to a hearing to determine if he violated his conditional release and agreed to remain at SGHC as a voluntary patient.  *See* Letter to the Honorable Mimi Cooper from ALJ Kerwin Anthony Miller (dated May 10, 2016), ECF No. 5-20.  On May 26, 2016, the District Court for Harford County entered an order finding Legg had not proven his eligibility for release and continuing Legg's commitment to DHMH.  *See* Order for Continued Commitment (May 26, 2016), ECF No. 5-21.  Legg remains committed pursuant to this order.

Although Legg alleges he has been illegally re-arrested on the same charge, in actuality, his commitments to Spring Grove have been the result of his unauthorized elopements from hospital grounds and violations of the terms of his numerous conditional release orders.  He is not entitled to damages or immediate release based on this allegation.

## CONCLUSION

Legg has failed to establish any violation of constitutional rights with regard to one incident of forced medication or his ongoing commitment to a State psychiatric facility.  Defendants are entitled to summary judgment.  A separate Order follows.


May 18, 2017 _____/s/_____
DEBORAH K. CHASANOW
United States District Judge